IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| MARK JACKSON and LYNETTE JACKSON, husband and wife,<br><br>    Plaintiffs,<br><br>vs.<br><br>GARY L. KEENEY, M.D. and MAYO CLINIC, a Minnesota Corporation, and MAYO COLLABORATIVE SERVICES, LLC d/b/a MAYO MEDICAL LABORATORIES<br><br>    Defendant. | Case No. 17-cv-4166<br><br>COMPLAINT AND DEMAND FOR JURY TRIAL |

Plaintiffs Mark Jackson and Lynette Jackson (hereinafter "Plaintiffs" or "Mark" and Lynette") allege as follows:

**THE PARTIES**

1. Plaintiffs are residents of Buffalo County, Nebraska.

2. At all relevant times, Defendant Gary L. Keeney, M.D. (hereinafter "KEENEY") was a pathologist practicing in Olmsted County, Minnesota and employed by MAYO CLINIC. At all relevant times KEENEY was acting in the course and scope of his employment with MAYO CLINIC. KEENEY is a resident of Minnesota.

3. Defendant MAYO CLINIC is a Minnesota non-profit corporation with its principal place of business in Rochester, Minnesota.

4. MAYO COLLABORATIVE SERVICES, was and is a Minnesota Limited Liability Company with its principal place of business in Rochester, Minnesota. At all

1

relevant times, MAYO CLINIC was the sole member of MAYO COLLABORATIVE SERVICES.

5. Upon information and belief, at all relevant times KEENEY was an employee, agent, and servant of MAYO CLINIC, and was acting within the course and scope of his employment and with the authority of MAYO CLINIC.

6. KEENEY's services were marketed and sold by MAYO COLLABORATIVE SERVICES to hospitals throughout the country.

7. Upon information and belief, MAYO COLLABORATIVE SERVICES does business under the trade name MAYO MEDICAL LABORATORIES (hereinafter "MML").

8. Defendant MAYO CLINIC and Defendant MAYO COLLABORATIVE SERVICES operate as a joint venture or otherwise in concert, making each responsible for the torts of the other.

**JURISDICTION AND VENUE**

9. Diversity Jurisdiction is vested in the Court and meets the requirements of 28 U.S.C. § 1332 in that this litigation involves citizens of different states and involves a controversy in excess of $75,000, inclusive of interest and costs.

10. Venue is proper in the United States District Court for the District of Minnesota pursuant to 28 U.S.C. § 1391(a) in that jurisdiction is founded only on diversity of citizenship and all defendants are residents of Minnesota.

## AFFIDAVIT OF EXPERT REVIEW

11.     Served with this Complaint is an Affidavit certifying that Plaintiffs' attorneys have reviewed the facts of this case with an expert. This Affidavit meets the requirements of Minnesota Statute § 145.682.

## FACTUAL ALLEGATIONS

12.     MAYO CLINIC claims to be the first and largest integrated, not-for-profit medical group practice in the world. Mayo Clinic claims doctors from every medical specialty work together to care for patients, joined by common systems and a philosophy of "the needs of the patient come first."

13.     MAYO CLINIC claims to have one of the largest clinical laboratories in the world, providing testing for other clinics and hospitals nationally and internationally.

14.     Upon information and belief, laboratory and pathology services are marketed to clinics and hospitals outside MAYO CLINIC by MAYO COLLABORATIVE SERVICES under the trade name MAYO MEDICAL LABORATORIES (hereinafter "MML"). MML's agents and employees market and provide these laboratory and pathology services to Nebraska physicians and hospitals on a regular and ongoing basis.

15.     MML represents that in offering its "state-of-the-art" laboratory services, it provides more than 4,000 hospitals and laboratories each month with access to "new cutting-edge tests," while offering these hospitals and their practitioners the expertise of MAYO CLINIC physicians and scientists regarding test selection, results interpretation, and clinical care guidance.

16. On November 8, 2013, Plaintiff Mark Jackson was admitted to Good Samaritan Hospital in Kearney, Nebraska, complaining of shortness of breath and cough. He was 42 years old at the time. A chest x-ray upon admission showed that the right lung had collapsed. Oxygen saturation upon admission was 82 percent. A CT of the chest showed a collapse of the right lung with a mass obstructing the right mainstem bronchus and a small pleural effusion.

17. On November 9, 2013, David Cantral, M.D. performed a fiber optic bronchoscopy and a fine needle biopsy of the mass. The tissue collected from the biopsy was sent to pathology for review.

18. On or about November 12, 2013, pathologist Steven C. Baker, M.D. in Kearney, NE reported to Mark's physicians that the mass was a poorly differentiated cancer: he could not characterize it as small cell or non-small cell carcinoma. Seeking the expertise MAYO holds itself out as providing, Dr. Baker sent the biopsy tissue to defendants for further testing and analysis.

19. On or about November 13, 2013, MML was provided Plaintiff Mark Jackson's pathology slides and tissue block by Dr. Baker. MML provided the material to KEENEY for analysis. KEENEY reviewed and tested Mark's pathology slides and tissue block.

20. KEENEY performed immunophenotyping using TTF-1 and p63, however, both were negative. With no further testing, KEENEY diagnosed Mark with non-small cell carcinoma. KEENEY called Dr. Baker in Kearney, Nebraska concerning his review and testing of the biopsy material, and told him his diagnosis.

21. Defendants knew or should have known that Mark Jackson and his doctors in Nebraska would rely on Defendants' representations of MAYO CLINIC's and KEENEY's expertise.

22. In reliance on KEENEY's diagnosis of "non-small cell lung cancer," Mark and his doctors scheduled him for surgery at the University of Nebraska Medical Center (UNMC). Based upon the pathology diagnosis of "poorly differentiated non-small cell carcinoma," Mark's physicians believed that the removal of the right lung was the best treatment option. On December 13, 2013, Mark's lung was removed from his chest. After the removal of Mark's lung, UNMC pathology tested the mass and determined that it was an anaplastic large cell lymphoma, not "non-small cell lung cancer."

23. On January 15, 2014, Dr. Baker amended his pathology diagnosis to "poorly differentiated malignant tumor" based upon his consultation with Dr. Syed Kazmi, a pathologist at UNMC.

24. On September 23, 2015, KEENEY reviewed the original slides and tissue block for a second time. After KEENEY's reexamination and additional immunophenotyping in 2015, KEENEY did two additional tests and determined that the original biopsy specimen that he examined in November 2013 was consistent with anaplastic large cell lymphoma, not "non-small cell lung cancer" as he had previously and erroneously reported.

25. KEENEY's testing and evaluation fell beneath the standard of care expected of pathologists in the same or similar circumstances and led to the unnecessary removal of Mark's right lung and other complications described below.

26. Specifically, KEENEY failed to meet the standard of care in one or more of the following ways:

   a. By failing to do a proper differential diagnosis;

   b. By failing to follow the old and well-recognized rule of medicine to first do no harm;

   c. By failing to perform adequate testing to rule in or out the type of cancer Mark Jackson had;

   d. By failing to rule out other forms of cancer;

   e. By failing to warn or disclaim (or disclose to Mark and his doctors) that the diagnosis was based on inadequate testing;

   f. By failing to advise that additional testing could be conducted to ensure a more certain diagnosis;

   g. In other ways to be shown according to proof at trial.

27. As a direct and proximate result of KEENEY's negligence, Mark received treatment based upon an incorrect and erroneous diagnosis. Had Mark been correctly diagnosed, his course of treatment would have been significantly different. The treatment for this particular anaplastic large cell lymphoma would have been chemotherapy and/or radiation. Treatment would not have required removal of his right lung.

28. Defendants' negligence was a proximate cause or contributing cause of the removal of Mark's right lung. Mark continues to suffer from and to treat for the injuries he received as a result of the needless removal of his right lung. He also suffered significant complications including:

      a.      pericardial tamponade;

      b.      paroxysmal atrial fibrillation;

      c.      left lower lobe (LLL) pneumonia;

      d.      thrombocytosis with platelet count of 700,000;

      e.      leukocytosis with WBC of 28,000;

      f.      hyponatremia Na-24; and

      g.      significant loss of lung function due to the loss of his largest lung and the ability to breathe, work, exercise, engage in activities, play and recreate with his sons and wife.

29.    As a direct and proximate result of KEENEY's negligence, Mark Jackson suffers permanent injuries, impairment, disability, scarring, and loss of function. The improper diagnosis caused him tremendous pain and suffering, inconvenience, anxiety, and emotional distress. He incurred significant medical and other incidental expenses. It is expected that his injuries and damages will persist into the future, and that ongoing treatment will be required. Mark has suffered loss of earnings and earning capacity. He fears that he will lose his job because of his inability to perform as he did before the needless removal of his lung. Some of his injuries and damages are permanent and will never resolve. He continues to incur medical and other expenses, and suffers a loss of enjoyment of life as a consequence of KEENEY's negligence. It is expected that Mark Jackson's injuries and damages will persist and that future treatment will be required.

30. As a direct and proximate result of Defendants' negligence, Lynette has suffered a significant loss, including the loss of Mark's comfort, society, services, and consortium.

## COUNT I
## NEGLIGENCE

Plaintiffs restate the preceding paragraphs and further allege:

31. KEENEY had a duty to exercise the degree of skill and care ordinarily possessed and exercised by a reasonably competent pathologist in the same or similar circumstances.

32. KEENEY undertook, within the meaning of Restatement (Second) of Torts § 324A, to render services to Dr. Baker and Mark Jackson.

33. Mark Jackson and his Nebraska health care providers reasonably relied on KEENEY to provide such care.

34. KEENEY failed to exercise ordinary care when he failed to perform adequate testing to rule in or out the type of cancer Mark Jackson had.

35. KEENEY further failed to exercise ordinary care when he failed to advise that additional testing could be conducted to ensure a more certain diagnosis.

36. As a direct and proximate result of KEENEY's negligence, Mark Jackson and Lynette Jackson suffered damages, as described above. KEENEY's negligence increased the risk of harm to Mark.

37. At the time of these events, KEENEY was operating within the course and scope of his employment with MAYO and/or MAYO COLLABORATIVE

SERVICES/MML. Accordingly, Defendants are vicariously liable for Defendant KEENEY's conduct.

38. Additionally, and/or in the alternative, Defendants were operating as a joint venture or otherwise in concert, making them responsible for KEENEY's negligence.

## DEMAND FOR JUDGMENT

**WHEREFORE**, Plaintiffs Mark and Lynette Jackson seek judgment against Defendants in a sum in excess of Seventy-Five Thousand Dollars ($75,000), jointly and severally, for all their damages in an amount to be determined by the jury, together with costs and disbursements, interest, and all such other relief as the court deems just.

**PLAINTIFFS HEREBY DEMAND A JURY TRIAL.**

Dated: *September 7, 2017*              **CONLIN LAW FIRM LLC**

                                        *s/ Stacy Deery Stennes*
                                        Thomas J. Conlin, 139555
                                        Stacy Deery Stennes, 390735

                                        600 Highway 169 South, Suit 1650
                                        Minneapolis, MN  55426
                                        Telephone: (952) 252-0490
                                        Facsimile: (952) 252-0489
                                        tom@conlinlawfirm.com
                                        stacy@conlinlawfirm.com

**THE ROBERT PAHLKE LAW GROUP**

Robert G. Pahlke, Neb. # 13201
  *Pro Hac Vice Admission Pending*
Kyle J. Long, Neb. # 22683
  *Pro Hac Vice Admission Pending*

2425 Circle Drive, Suite 200
Scottsbluff, Nebraska 69363-1224
Telephone: (308) 633-4444
Facsimile: (308) 633-4445
rgp@pahlkelawgroup.com

**ATTORNEYS FOR PLAINTIFF**

Minn. Stat. §549.211 ACKNOWLEDGMENT: Plaintiffs, through their attorney's signature below, hereby certify that these papers comply with the provisions of Minn. Stat. §549.211.

Dated: *September 7, 2017*          *s/ Stacy Deery Stennes*
                                    Thomas J. Conlin / Stacy Deery Stennes
                                    Attorneys for Plaintiff